**PECOS COUNTY STATE BANK,**
Appellant,

v.

**EL PASO LIVESTOCK AUCTION CO., INC., Appellee.**

**No. 6832.**

Court of Civil Appeals of Texas,
El Paso.

Aug. 8, 1979.

Rehearing Denied Sept. 5, 1979.

Stubbeman, McRae, Sealy, Laughlin & Browder, Rodney W. Satterwhite, Al W. Schorre, Jr., Midland, for appellant.

Peticolas, Luscombe, Stephens & Windle, E. K. Peticolas, El Paso, Vial, Hamilton, Koch, Tubb, Knox & Stradley, James A. Knox, Dallas, Shafer, Gilliland, Davis, Bunton & McCollum, Inc., Lucius D. Bunton, Odessa, for appellee.

## OPINION

WARD, Justice.

The Plaintiff as payee on a sight draft recovered summary judgment against Pecos County State Bank on the grounds that the Bank was payor and held the demand item beyond its midnight deadline. Sec. 4.302, Tex.Bus. & Comm.Code Ann. Judgment was in the face amount of the draft together with prejudgment interest at the rate of 9%. The Bank appeals on points claiming it was only a collecting bank; that an excusable delay was not disproven; and that it was liable only for 6% interest. We affirm except as to the amount of prejudgment interest.

The summary judgment proof consisted of affidavits filed, answers to interrogatories, and three depositions. The proof showed that Mesa Packing Company, Inc. was engaged in the business of buying cattle for slaughter at its plant in Fort Stockton in Pecos County. The Packing Company maintained it's bank account at Pecos

County State Bank. The Packing Company used the services of Buster Cox, an independent cattle buyer, to purchase cattle on the open market for its slaughtering business. On December 20, 1977, Buster Cox purchased cattle on behalf of the Packing Company from El Paso Livestock Auction Co., Inc., in El Paso, and wrote the subject draft as payment for the cattle. The draft is dated December 20, 1977, is payable to the order of El Paso Livestock Auction Co., Inc. for $23,439.08, and is signed by Buster Cox. It contains the following:

Value Received and Charged to Account of
Mesa Packing Company
Pecos County State Bank
Fort Stockton, Texas

Mr. and Mrs. Robert Elliott were the stockholders and operators of Mesa Packing Company, and authorized Buster Cox to purchase cattle for them and to pay for them by draft drawn against their account at the Bank. Mr. Gillette was Senior Vice President of the Bank and handled drafts for that account from 1975 until he left the Bank on December 30, 1977. For a period of time during the latter part of 1977, he ordered that drafts on Mesa Packing account be held without return or notice of dishonor until the Elliotts would deposit funds to cover the drafts. He stated that Buster Cox was authorized to draw drafts on the Mesa Packing Company account and he honored the Cox drafts whenever sufficient funds were in the account although Cox was not authorized to draw on that account, according to the Bank's signature card.

The draft in question was forwarded by El Paso National Bank to the Pecos County State Bank where it was received on December 23, 1977. Because the account was insufficient, Gillette contacted the Elliotts and was informed that funds would be available shortly to cover the draft and, because of the information received, he ordered that the draft be held. On December 30, he left the Bank's employ and on January 4, 1978, the draft was returned as a dishonored item by the Bank. Mesa Packing Company went bankrupt and was shut down on January 9, 1978.

El Paso Livestock Auction Co., Inc. then filed its suit against the Bank and alleged that it was strictly liable under the provisions of Sec. 4.302(1), Tex.Bus. & Comm. Code Ann., for failing to return the draft before the midnight deadline, and it was on this basis that its motion for summary judgment was thereafter filed. By its answer to the motion for summary judgment, the Bank alleged that it was not liable for two reasons: first, that a genuine issue as to a material fact existed that the Bank was not a payor bank but was a collecting bank and therefore not liable for retaining the draft past the midnight deadline, and second, the Defendant Bank had received verbal authorization from the El Paso National Bank to hold the draft for an additional period of time past the midnight deadline. After hearing, summary judgment was granted in favor of the Plaintiff in the sum of $23,439.08, which was the amount of the draft, plus interest at the rate of 9% per annum from and after December 26, 1977, and the Bank appeals.

The Bank's first two points raise the assertion that it was a collecting bank instead of a payor bank and therefore not liable for retaining the draft past the midnight deadline. It recognizes that it will be held strictly liable for the full amount of the draft if it is considered under the Code as a "payor" bank. The Bank relies on the statutes in force before the enactment of the Texas Uniform Commercial Code and on cases construing those statutes when the distinction was made between a collecting and a drawee bank. Thus, we have the draft

To Shaw Pkg Co.
Tyler State Bank
    & Tr. Co.
    Tyler, Tex.,

which was considered in *Tyler Bank & Trust Company v. Saunders*, 159 Tex. 158, 317 S.W.2d 37 (1958), and the draft

To Julius Caesar Cattle Account
First National Bank
Hallettsville, Texas.,

considered in *San Antonio Livestock Market Institute v. First National Bank of Hallettsville,* 431 S.W.2d 408 (Tex.Civ.App.—Corpus Christi 1968, no writ). In each of those instances, the bank was held to be a collecting as opposed to a drawee bank under the Texas Bank Collection Code and the Negotiable Instruments Law.

Under the plan as provided in the Texas Uniform Commercial Code, one main distinction is now made between a payor and a collecting bank. The definition of payor bank was considered in *New Ulm State Bank v. Brown,* 558 S.W.2d 20 at 25 (Tex. Civ.App.—Houston [1st Dist.] 1977, no writ):

> A "payor" bank is defined as "a bank by which an item is payable as drawn or accepted." Tex.Bus. & Comm.Code Ann. § 4.105(2). The payor bank includes a "drawee" bank and also a bank "at which" an item is payable if the item constitutes an order on the bank to pay. See, Official Comment 2, § 4.105(2).

There, New Ulm State Bank was held to be the payor bank and "[t]here being no evidence that [it] acted in a capacity other than a payor bank, its liability is measured by the provisions of Tex.Bus. & Comm.Code Ann. § 4.302." The court stated the following:

> Each draft in question constituted an order on New Ulm State Bank, as the drawee bank, to pay the face amount of the draft. Although the draft did not, of itself, operate as an assignment of funds in the bank's hands available for payment, and did not subject the bank to liability under the instrument until acceptance, the bank did have the obligation to handle the draft in a timely manner. Tex.Bus. & Comm.Code Ann. § 3.409, Official Comment No. 2. Its liability for the late return of an item resulted from the responsibilities imposed upon it under the statute, and a recovery based upon its failure to perform its statutory duty was not dependent upon a showing that the instrument was enforceable against it. 2 Bender, Uniform Commercial Code Service, 7–31 § 7.15(2).

It has been previously pointed out that the role of the payor bank in the collecting process is crucial since it knows whether or not the drawer has funds available to pay the item. In the present case, the evidence conclusively shows that Pecos County State Bank deliberately aligned itself with its customer to protect the customer's credit and consciously disregarded the duty imposed upon it. The strict liability imposed by Sec. 4.302, Tex.Bus. & Comm.Code Ann., was made to fit the present situation. See *Continental National Bank v. Sanders,* 581 S.W.2d 293 (Tex.Civ.App.—El Paso, 1979, no writ); Annotation, 18 ALR 3d 1376.

Under similar circumstances where the statute has been construed, the bank in question has been held to be a payor bank. In *Farmers Cooperative Livestock Market, Inc. v. Second National Bank of London,* 427 S.W.2d 247 (Ky.1968), the following was stated:

> The further significant consideration with respect to handling this item is whether the appellee was the "payor" bank. The statute we have above quoted, KRS 355.4–302, makes only a payor bank accountable when it fails to process the item within the deadline limit. KRS 355.4–105(b) defines a payor bank as "a bank by which an item is payable as drawn or accepted." This draft was drawn on appellee bank and was payable by it. The fact that it was chargeable to Martin's account is not significant. All checks are chargeable to someone's account. Appellee was the payor bank.
>
> We are at loss to discern how appellee was, as it contends, a "collecting bank". Such is defined in KRS 355.4–105(d) as "any bank handling the item for collection *except* the payor bank". (Emphasis added.)

See also *Engine Parts, Inc. v. Citizens Bank of Clovis,* 582 P.2d 809 (Sup.Ct.N.M.1978). Based on the reasoning contained in the above quoted cases, and without adding further detail, the first two points are overruled.

■ Points of error three and four are that the trial Court erred in granting the motion for summary judgment as there was

a genuine issue as to the damages incurred for holding the draft past the midnight deadline as there was a good faith attempt to collect the same, and there was no evidence as to the balance in the account of Mesa Packing Company during the period the draft was in the possession of the Pecos County State Bank. Since the Bank was a payor bank and the draft was held past the midnight deadline without paying or returning the item or sending notice of dishonor, strict liability attached.

■ The fifth point is to the effect that a material fact was presented that the Appellant received a verbal authorization from the El Paso National Bank to hold the draft for an additional period of time past the midnight deadline. Summary judgment proof was presented that on January 3, 1978, the Appellant was advised to hold the item one more day. Strict liability for the face amount of the draft had attached long before the conversation in question. No defense is presented. *Continental National Bank v. Sanders,* supra.

■ The sixth point asserts that there was no evidence that the delay in giving notice of the dishonor was not excusable. Sec. 4.108(b), Tex.Bus. & Comm.Code Ann., provides for excusable delays for a payor bank beyond the time limits prescribed, and points out in Comment 4 that such delays are affirmative defenses. No defense has been presented, either in the pleadings or in the Appellant's answer to the motion for summary judgment. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. Rule 166–A, Tex.R.Civ.P. (Supp.1979).

■ By its final point, Appellant attacks the judgment awarding 9% prejudgment interest rather than 6% interest—the Appellant in effect conceding that the Appellee is entitled to prejudgment interest under either the statute or at common law as an element of damages. *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth,* 578 S.W.2d 109 at 116 (Tex.1978). The problem arises because in 1975 the Legislature amended Article 5069–1.05, Tex.Rev.Civ.Stat.Ann., and fixed

the usual rate of interest on judgments in this State at the rate of 9% per annum while leaving Article 5069–1.03 unamended at 6%. The latter statute applies to recoveries on written contracts and on open accounts. As we understand it, the recovery of prejudgment interest where sought at common law as an element of damages was fixed at 6% because the courts by analogy adopted the legal rate of interest fixed by the statute as the standard by which to be governed in assessing those damages for the detention of money. *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11 (1897). That was the statutory predecessor to Article 5069–1.03 which is still at 6%. By Article 5069–1.01(b) "[l]egal interest" is still defined as that interest which is allowed by law when the parties to a contract have not agreed on any particular rate, and that is still the 6% as determined by Article 5069–1.03. Under this reasoning, the Appellant's last point is sustained, and the judgment will be so changed that El Paso Livestock Auction Co., Inc. recover from the Defendant, the Pecos County State Bank, the total sum of $23,439.08 plus interest thereon at the rate of 6% per annum from and after December 26, 1977, until September 7, 1978, the date of the trial Court's judgment, and thereafter at the rate of 9% per annum.

In all other respects, the judgment of the trial Court is affirmed.