Jack C. BUTLER, Appellant,

v.

WRIGHT WAY SPRAYING SERVICE, Appellee.

No. 04–82–00558–CV.

Court of Appeals of Texas, San Antonio.

Dec. 19, 1984.

Rehearing Denied Jan. 15, 1985.

---

Clyde L. Wright, Jr., Alice, Robert L. Joseph, Sinton, for appellant.

Roy D. Hunt, Alice, for appellee.

Before BUTTS, CANTU and DIAL, JJ.

## OPINION

CANTU, Justice.

Appellee, Wright Way Spraying Service, as plaintiff brought suit on a sworn account against appellant, Jack C. Butler, to recover on an alleged debt. The account was based on the providing of crop spraying services and chemicals by the appellee

to the appellant over a period of time from July, 1980, through August, 1981.

Appellant's answers admitted the existence of the debt, admitted an oral contract for an open account but denied the existence of a written contract. Appellant filed a counterclaim alleging that appellee had charged usurious interest in violation of TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon Supp.1984), TEX.REV.CIV.STAT. ANN. art. 5069–1.04 (Vernon 1971), and TEX.REV.CIV.STAT.ANN. art. 5069–1.04 (Vernon Supp.1984). Appellant, therefore, claimed the penalty provision provided for in TEX.REV.CIV.STAT.ANN. art. 5069–1.-06 (Vernon Supp.1984).

Following a trial to the court, a judgment was entered in favor of appellee for the sum of $207,000.00 representing the principal amount of the debt, prejudgment interest at the rate of 6% per annum for the period of September 1, 1981 through August 27, 1982, post-judgment interest at the rate of 9% per annum until paid; and attorney's fees in the amount of $20,000.00 together with costs of court. Appellant's usury counterclaim was denied and such denial forms the sole basis of this appeal.

In two points of error appellant initially asserts that the trial court erred in denying his counterclaim because the evidence established, as a matter of law, that appellee charged appellant's account an interest rate greater than allowed by law. Appellant further contends that the trial court erred in finding no usury and in denying his counterclaim because the great weight and preponderance of the evidence shows that appellee charged interest on appellant's account at more than twice the interest rate allowed by law.

■ We will consider first appellant's contention that the evidence conclusively establishes, as a matter of law, the charging of interest at a rate greater than that allowed by law. In reviewing "matter of law" points this court will examine all the evidence in support of the findings forming the basis of the judgment and if the converse of the finding is conclusively established, the point will be sustained. *Precipitair Pollution Control v. Green*, 626 S.W.2d 909, 911 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.).

Although appellant raised usury as a counterclaim, we perceive no reason to treat this any differently than we would an affirmative defense, since in either case the conclusive establishment of usury would invoke the penalties under TEX.REV.CIV. STAT.ANN. art. 5069–1.06 (Vernon Supp. 1984). *See Wall v. East Texas Teachers Credit Union*, 533 S.W.2d 918, 921–922 (Tex.1976).

In 1980 TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon Supp.1984) provided:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

Moreover in 1980 TEX.REV.CIV.STAT. ANN. art. 5069–1.04 (Vernon 1971) provided:

The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, directly or indirectly, provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle.[1]

The 67th Legislature amended Article 5069–1.04 so that effective May 8, 1981 it read in pertinent part:

"The parties to any written contract may agree to and stipulate for any rate of interest, or in an agreement described

---

1. Amended by Acts 1981, 67th Leg., p. 279, ch. 111, § 5, eff. May 8, 1981; Sec. b(4) to (6) added by Acts 1983, 68th Leg., p. 840, ch. 194, § 30, eff. July 1, 1983; Sec. (d) amended by Acts 1983, 68th Leg., p. 841, ch. 194, § 31, eff. July 1, 1983; Sec. (n)(6) amended by Acts 1983, 68th Leg., p. 811, ch. 194, § 1, eff. May 24, 1983.

in Chapter 6, 6A, or 7 of this Title, any rate or amount of time price differential producing a rate that does not exceed ..." (Emphasis supplied.)

For the purpose of this opinion, the amendment increased the annual ceiling on interest rates for agreed upon contracts to 24%.

Any person charging more than the maximum legal rate allowed by the aforementioned article incurs the penalties imposed by TEX.REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon Supp.1984) which states:

Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest *contracted for, charged or received,*[2] such usurious interest being the amount the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorneys fees fixed by the court except that in no event shall the amount forfeited be less than Two Thousand Dollars or twenty percent of the principal, whichever is the smaller sum; provided that there shall be no penalty for any usurious interest which results from an accidental and bona fide error. (Emphasis added.)

The statute imposes penalty upon any person who "charges" interest in excess of the amount of interest allowed by law. "Charges" means unilaterally placing on an account an amount due as interest. *Hagar v. Williams,* 593 S.W.2d 783, 788 (Tex. Civ.App.—Amarillo 1979, no writ).

The undisputed evidence at trial discloses that there was never a written contractual relationship between the parties. Appellee admitted that his initial contact with appellant was by telephone in August of 1980 when appellant first requested the spraying services be performed by appellee. Appellee admitted that he originally had no agreement, written or oral, to charge interest on said account, but insisted that an oral agreement to charge interest came into being sometime in June, 1981.

An undisputed fact is that appellee began charging interest at the rate of 1% per month or 12% per annum interest on the 1980 invoices. It is further undisputed and appellee's own testimony indicates that in June 1981, appellee charged 1½% per month interest, (18% per annum), on the account balance even though there was no written agreement.

In 1980 the maximum legal rate that could be charged on an open account where no specific rate of interest had been agreed upon was 6% per annum, nevertheless appellee was charging 12% per annum as of November 1980.

A review of the record has shown appellee's own admission that no agreement existed between the parties to charge a specified interest rate, and following the rule in *Hagar,* the unrefuted evidence that appellee unilaterally placed an amount as interest on appellant's account charging interest at the rate of 12% per annum and 18% per annum, rates greater than allowed by law, conclusively established appellant's usury counterclaim. Therefore the penalties under TEX.REV.CIV.STAT.ANN. art. 5069–1.06 § 1 (Vernon Supp.1984) came into play.

Appellant's point of error number two asserts error in the court's finding of no usury and in the denial of his counterclaim because the great weight and preponderance of the evidence shows that appellee was charging interest rates at more than twice the interest rate allowed by law. This court considers all evidence to decide if the court's finding of no usury leading to denial of appellant's usury counterclaim is against the great weight and preponderance of evidence as to be manifestly unjust. *In re King's Estate,* 244 S.W.2d 660, 661 (Tex.1951).

---

**2.** By describing the conditions precedent to recovery of penalties in the disjunctive, the Legislature made it clear that only one such condition need occur to trigger penalties, either a contract for, a charge of, or a receipt of usurious interest. *Windhorst v. Adcock Pipe & Supply,* 547 S.W.2d 260, 261 (Tex.1977).

The record reflects that commencing in July, 1981, appellee regularly mailed billing statements charging an interest rate of 18% per annum. The month before, appellee prepared a written agreement indicating that a finance charge on appellant's account would be computed at an annual percentage rate of 18%. The agreement was signed by appellee and mailed to appellant for his signature. Appellant did not sign the agreement nor did he sign a subsequent copy of the same agreement mailed to him in August, 1981.

Appellee argues that an agreement arose between him and appellant by reason of a course of dealing between the parties, thus, bringing this case within the provisions of Article 5069–1.04. Specifically, appellee cites us to *Preston Farms & Ranch Supply, Inc. v. Bio-Zyme Enterprises,* 625 S.W.2d 295 (Tex.1982), which presents a fact situation comparable to the case at bar. Appellee's reliance on *Preston Farms* is, however, misplaced.

*Preston Farms* involved a suit on sworn account arising from a sale of goods and a counterclaim alleging usury. The question before the Court was whether Preston Farms and its owner agreed to pay interest on the account. *See Id.* at 296. In concluding that an agreement existed between the parties, the Court applied the concept of "course of conduct" as defined in Section 2.204 Texas Business and Commerce Code which states:

> (a) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

Additionally, the Court relies upon case law addressing "contracts implied in fact;" and, as stated in *Preston Farms:*

> A contract implied in fact is one in which under the circumstances, the acts of the parties are such as to indicate according to the ordinary course of dealing and the common understanding of men a mutual intention to contract as where one accepts the tendered service of another under circumstances justifying the infer-ence that such other expected to be paid for such services.... A contract implied from the facts and circumstances in evidence is as binding as would be an expressed one. (citations omitted).

*Id.* at 298.

In finding evidence of a course of conduct giving rise to an agreement to pay interest the Court recognized that the parties had extensive dealings with each other, that the monthly statements contained a service charge provision, that no objection to the service charge was ever made, and that service charges were in fact paid. *Id.* at 298.

In sustaining the trial court's finding that an agreement to pay specified interest existed, the Court stated, "[b]y his continued purchases and payments he at least impliedly agreed to pay the specified interest." *Id.* at 298.

It is undisputed that the parties in the instant case had extensive dealings with each other. Monthly statements containing a service charge provision were sent to appellant, and no objections were made. In *Preston Farms,* the service charges were in fact paid by the obligor, whereas in the case at bar, the only payment made by appellant was in May, 1981, and the evidence is inconclusive as to whether or not this payment was made solely toward the principal or toward both, principal and interest. Moreover, appellant declined to sign the written agreement which inferentially indicates a rejection of an agreement to pay a specified amount of interest. The only plausible deduction to be made from appellant's conduct is that appellant not only did not impliedly agree to pay a specified rate of interest, but expressly disagreed to do so. Appellant's conduct and course of dealings with appellee did not give rise to an obligation to pay the 1½% per month interest.

A review of the findings of fact filed with the record indicates that the counterclaim alleging usury was denied because the court found that no usurious interest was ever charged or claimed by

appellee. Such findings are controlling upon this court if there is some evidence of substantial and probative character to support them. *Flato Electric Supply Co. v. Grant,* 620 S.W.2d 915, 917 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). We find such a position contrary to the great weight and preponderance of the evidence.

■ Appellant is entitled to collect as a penalty three times the amount of usurious interest charged. That amount is calculated as the total interest charged exceeding the amount of interest allowed by law, but not less than two thousand dollars or twenty percent of the principal at the time of the charge, whichever is the smaller amount.

The following computations indicate the penalty amount for the 1980 account balance, and the 1981 account for each farm:

1980 Account Balance [3]
Total charges (July, August) = $13,088.05
Interest rate charged:
    .833% per month (10% per annum) August, 1980 to March, 1981
    1.5% per month (18% per annum) June, 1981 to December, 1981
Interest rate allowed — .5% per month (6% per annum)

| Month | Charged 10%/Annum | | Allowed 6%/Annum | | Difference (Charged-Allowed) |
|---|---|---|---|---|---|
| August | $13,088.05 | | $13,088.05 | | |
| (interest) | 109.02 | — | 65.44 | = | $ 43.58 |
| September | 13,197.07 | | 13,153.49 | | |
| (i) | 109.93 | — | 65.76 | = | 44.17 |
| October | 13,307.00 | | 13,219.25 | | |
| (i) | 110.85 | — | 66.09 | = | 44.76 |
| November | 13,417.85 | | 13,285.35 | | |
| (i) | 111.77 | — | 66.42 | = | 45.35 |
| December | 13,529.62 | | 13,351.77 | | |
| (i) | 112.70 | — | 66.75 | = | 45.95 |
| January (1981) | 13,642.32 | | 13,418.52 | | |
| (i) | 113.64 | — | 67.09 | = | 46.55 |
| February | 13,755.96 | | 13,485.61 | | |
| (i) | 114.58 | — | 67.42 | = | 47.16 |
| March | 13,870.54 | | 13,553.03 | | |
| (i) | 115.54 | — | 67.76 | = | 47.78 |
| April | 13,986.08 | | 13,620.79 | | |
| (payment) | (7,000.00) | | (7,000.00) | | |
| May | 6,986.08 | | 6,620.79 | | |
| (interest) | –0– | | –0– | | |
| June | 6,986.08 | | 6,620.79 | | |
| (i) | 104.79 | — | 33.10 | = | 71.69 |
| July | 7,090.87 | | 6,653.89 | | |
| (i) | 106.36 | — | 33.27 | = | 73.09 |
| August | 7,197.23 | | 6,687.16 | | |
| (i) | 107.95 | — | 33.43 | = | 74.52 |
| September | 7,305.18 | | 6,720.59 | | |
| (i) | 109.58 | — | 33.60 | = | 75.98 |
| October | 7,414.76 | | 6,754.19 | | |
| (i) | 111.22 | — | 33.77 | = | 77.45 |

**3.** Appellee's testimony and billing statements reflect a 12% per annum interest rate, however, calculations reveal an interest rate of .83% per month (10% per annum) was charged. The rate of 10% per annum was charged on appellant's account, therefore, that rate is used in calculating the penalty amount.

| | | | | | |
|---|---|---|---|---|---|
| November | 7,525.98 | | 6,787.96 | | |
| (i) | 112.90 | – | 33.94 | = | 78.96 |
| December | 7,638.88 | | 6,821.90 | | |
| (i) | 114.58 | – | 34.10 | = | 80.48 |
| | $7,753.46 | | $6,856.00 | | $897.46 |
| | | | | | × 3 |
| | | | Penalty | – | $2,692.38 |

Hoffman Farm

    Total Charges $110,052.66

    Interest rate charged:

        1.5% per month (18% per annum) July, 1981 to December, 1981

    Interest rate allowed:

        .5% per month (6% per annum)

| Month | Charged 18%/annum | | Allowed 6%/annum | | Difference Charged-Allowed |
|---|---|---|---|---|---|
| May Charges | $20,621.61 | | $20,621.61 | | |
| (interest) | –0– | | –0– | | |
| June | 34,407.50 | | 34,407.50 | | |
| (i) | –0– | – | 103.10 | = | $ (103.10) |
| July | 41,332.00 | | 41,332.00 | | |
| (i) | 309.32 | – | 275.66 | = | 33.66 |
| | 96,670.43 | | 96,736.87 | | |
| August | 13,691.55 | | 13,691.55 | | |
| (i) | 830.08 | – | 483.71 | = | 346.37 |
| September | 111,192.06 | | 110,912.13 | | |
| (i) | 1,462.51 | – | 554.56 | = | 907.95 |
| October | 112,654.57 | | 111,466.69 | | |
| (i) | 1,689.82 | – | 557.33 | = | 1,132.49 |
| November | 114,344.39 | | 112,024.02 | | |
| (i) | 1,715.17 | – | 560.12 | = | 1,155.04 |
| December | 116,059.56 | | 112,584.14 | | |
| (i) | 1,740.89 | – | 562.92 | = | 1,177.97 |
| | $117,800.45 | | $113,147.06 | | $4,650.38 |
| | | | | | × 3 |
| | | | Penalty | – | $13,951.14 |

540 Acres South of Town — 281
      Total Charges $63,409.05
      Interest rate charged:
          1.5% per month (18% per annum) July, 1981 to December, 1981
      Interest rate allowed:
          .5% per month (6% per annum)

| Month | Charged 18%/annum | | Allowed 6%/annum | | Difference Charged-Allowed |
|---|---|---|---|---|---|
| May Charges | $11,830.75 | | $11,830.75 | | |
| (interest) | –0– | | –0– | | |
| June Charges | 18,035.75 | | 18,035.75 | | |
| (i) | –0– | | 59.15 | = | $ (59.15) |
| July Charges | 21,341.50 | | 21,341.50 | | |
| (i) | 177.46 | – | 149.63 | = | 27.83 |
| | 51,385.46 | | 51,416.78 | | |
| August | 12,201.05 | | 12,201.05 | | |
| (i) | 450.66 | – | 257.08 | = | 193.58 |
| September | 64,037.17 | | 63,874.91 | | |
| (i) | 777.54 | – | 319.36 | = | 458.18 |
| October | 64,814.71 | | 64,194.27 | | |
| (i) | 972.22 | – | 320.97 | = | 651.25 |
| November | 65,786.93 | | 64,515.24 | | |
| (i) | 986.80 | – | 322.58 | = | 664.22 |
| December | 66,773.73 | | 64,837.82 | | |
| (i) | 1,001.61 | – | 324.19 | = | 677.42 |
| | $67,775.34 | | $65,162.01 | | $2,613.33 |
| | | | | | × 3 |
| | | | Penalty – | | $7,839.99 |

160 Acres Creek Pl.
      Total Charges $17,640.30
      Interest rate charged:
          1.5% per month (18% per annum) July, 1981 to December, 1981
      Interest rate allowed:
          .5% per month (6% per annum)

| Month | Charged 18%/annum | | Allowed 6%/annum | | Difference Charged-Allowed |
|---|---|---|---|---|---|
| May Charges | $ 3,074.60 | | $ 3,074.60 | | |
| (interest) | –0– | | –0– | | |
| June Charges | 5,320.00 | | 5,320.00 | | |
| (i) | –0– | | 15.37 | = | $ (15.37) |
| July Charges | 6,471.25 | | 6,471.25 | | |
| (i) | 46.12 | – | 42.05 | = | 4.07 |
| | 14,911.97 | | 14,923.27 | | |
| August | 2,774.45 | | 2,774.45 | | |
| (i) | 126.61 | – | 74.62 | = | 51.99 |
| September | 17,813.03 | | 17,772.34 | | |
| (i) | 225.58 | – | 88.86 | = | 136.72 |
| October | 18,038.61 | | 17,861.20 | | |
| (i) | 270.58 | – | 89.30 | = | 181.28 |
| November | 18,309.19 | | 17,950.50 | | |
| (i) | 274.64 | – | 89.75 | = | 184.89 |
| December | 18,583.83 | | 18,040.25 | | |
| (i) | 278.76 | – | 90.20 | = | 188.56 |
| | $18,862.59 | | $18,130.45 | | $732.14 |
| | | | | | × 3 |
| | | | Penalty – | | $2,196.42 |

65 Acres at Y

    Total Charges $7,142.09
    Interest rate <u>charged:</u>
        1.5% per month (18% per annum) July, 1981 to December, 1981
    Interest rate <u>allowed:</u>
        .5% per month (6% per annum)

| Month | Charged 18%/annum | | Allowed 6%/annum | | Difference Charged-Allowed |
|---|---|---|---|---|---|
| May Charges | $1,242.94 | | $1,242.94 | | |
| (interest) | –0– | | –0– | | |
| June Charges | 2,222.25 | | 2,222.25 | | |
| (i) | –0– | — | 6.21 | = | $ (6.21) |
| July Charges | 2,549.25 | | 2,549.25 | | |
| (i) | 18.64 | — | 17.36 | = | 1.28 |
| | 6,033.08 | | 6,038.01 | | |
| August | 1,127.65 | | 1,127.65 | | |
| (i) | 52.26 | — | 30.20 | = | 22.06 |
| September | 7,212.99 | | 7,195.86 | | |
| (i) | 91.28 | — | 35.97 | = | 55.31 |
| October | 7,304.27 | | 7,231.83 | | |
| (i) | 109.56 | — | 36.16 | = | 73.40 |
| November | 7,413.83 | | 7,267.99 | | |
| (i) | 111.21 | — | 36.33 | = | 74.88 |
| December | 7,525.04 | | 7,304.32 | | |
| (i) | 112.88 | — | 36.51 | = | 76.37 |
| | $7,637.92 | | $7,340.83 | | $297.09 |
| | | | | | × 3 |
| | | | Penalty — | | $891.27 |

Orange Grove

    Total Charges $2,775.00
    Interest rate <u>charged:</u>
        1.5% per month (18% per annum) July, 1981 to December, 1981
    Interest rate <u>allowed:</u>
        .5% per month (6% per annum)

| Month | Charged 18%/annum | | Allowed 6%/annum | | Difference Charged-Allowed |
|---|---|---|---|---|---|
| July | $2,775.00 | | $2,775.00 | | |
| (interest) | –0– | | –0– | | |
| August | –0– | | –0– | | |
| (i) | 41.63 | — | 13.87 | = | $ 27.76 |
| September | 2,816.63 | | 2,788.87 | | |
| (i) | 42.25 | — | 13.94 | = | 28.31 |
| October | 2,858.88 | | 2,802.81 | | |
| (i) | 42.88 | — | 14.01 | = | 28.87 |
| November | 2,901.76 | | 2,816.82 | | |
| (i) | 43.53 | — | 14.08 | = | 29.45 |
| December | 2,945.29 | | 2,830.90 | | |
| (i) | 44.18 | — | 14.15 | = | 30.03 |
| | $2,989.47 | | $2,845.05 | | $144.42 |
| | | | | | × 3 |
| | | | Penalty — | | $433.26 |

We sustain appellant's points of error finding, as a matter of law, that appellee was charging usurious interest and we, also, find that the trial court erred in denying appellant's counterclaim because the finding of no usury is against the great

weight and preponderance of the evidence inasmuch as the evidence established that appellee charged interest rates on appellant's account at more than twice the interest rate allowed by law.

We hold that appellant is entitled to collect the sum of $28,004.46 from appellee as penalties for charging usurious interest rates. Further, the additional penalty of forfeiture of principal is incurred where appellee charged more than twice the allowed interest on appellant's account. TEX.REV.CIV.STAT.ANN. art. 5069–1.-06(2) (Vernon 1971). The amount of principal for the 1980 and 1981 charges, $207,-107.15,[4] is forfeited because appellee's charge of 18% per annum interest was greater than double the interest rate allowed.

The judgment of the trial court is reversed and judgment is herein rendered that appellant have and recover from appellee the sum of $28,004.46 as penalties under the provisions of TEX.REV.CIV.STAT. ANN. art. 5069–1.06 (Vernon Supp.1984) together with costs of court and interest as provided by law, and that appellee's claim in the principal sum of $207,107.15 be forfeited under the provisions of TEX.REV. CIV.STAT.ANN. art. 5069–1.06(2) (Vernon 1971).

■ Appellant prayed for reasonable attorney's fees under the statute, but no evidence was adduced on the matter due to the trial court's refusal to find usury. We sever and remand the issue of awarding reasonable attorney's fees to the trial court for its determination. TEX.R.CIV.P. 434; *McPherson v. Keeling*, 280 S.W.2d 948 (Tex.Civ.App.—Amarillo 1955, no writ).

The judgment of the trial court is reversed and rendered in part and remanded in part.

---

4. Appellee plead for recovery of the $207,000.00 in the trial court, however a summation of outstanding charges totaled $207,107.15.