707 S.W.2d 943 (1986)
MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, Appellant,
v.
FIBERGLASS INSULATORS, Appellee.
No. 01-85-0545-CV.
Court of Appeals of Texas, Houston (1st Dist.).
March 20, 1986.
Rehearing Denied April 10, 1986.
*944 Brock C. Akers, Vinson & Elkins, Houston, for appellant.
Ronald G. Wiesenthal, Williamson, Gardner, Hall & Wiesenthal, Houston, for appellee.
Before SAM BASS, COHEN and HOYT, JJ.
OPINION
COHEN, Justice.
Neither a borrower, nor a lender be;
For loan oft loses both itself and friend,...
Shakespeare, Hamlet, I, iii, 75.
Missouri-Kansas-Texas Railroad Company (MKT) sued Fiberglass for $9,290.00 and "interest" for failure to pay demurrage due pursuant to a written contract. The jury found for MKT on all issues, but the court granted Fiberglass a judgment notwithstanding the verdict for damages of $11,469.00, based on usury. The trial judge ruled that, during the trial, MKT had committed usury when Frank Listvan, MKT's accounts manager, requested an award of 10 percent prejudgment interest on the debt, compounded annually, from January 1, 1979. Once Listvan testified, on cross-examination, that he was "charging" prejudgment interest in this fashion, the trial court allowed Fiberglass to file a supplemental answer asserting usury, and thereafter denied MKT's requested trial amendment asserting bona fide error and special issues regarding bona fide error and intent to charge usurious interest.
Based solely on Listvan's testimony, the court found MKT guilty of charging interest at more than twice the legal prejudgment rate, and consequently, it forfeited all principal and interest due to MKT and awarded Fiberglass three times the amount of usurious interest charged, plus attorney's fees. This occurred even though no contract, written or oral demand, business record, or other document ever mentioned interest, and MKT's petition made only a one-word reference to "interest."
To summarize, MKT, which the jury found was owed $15,140.00 by Fiberglass for debt and attorney's fees, left the trial court owing $15,969.00 in damages and attorney's fees to Fiberglass, its debtor when the trial began.
MKT contends that it cannot be guilty of usury because 10 percent is a legal rate of prejudgment interest under Tex.Rev.Civ. Stat.Ann. art. 5069-1.05 (Vernon Supp. 1986). MKT specifically relies on sec. 2 of art. 5069-1.05, which provides that the interest rate on "all judgments of the courts of this state" shall vary from 10 to 20 percent, as determined by the consumer credit commissioner.
We reject MKT's argument. Article 5069-1.05 is captioned "Rate of judgments." The rates it establishes begin to run "on the day the judgment is rendered" and end "on the day the judgment is satisfied." Article 5069-1.05 applies only to judgments.
The contract herein did not mention interest. The statute governing the rate of prejudgment interest in such a case is art. 5069-1.03 (Vernon Supp.1986), which provides:
*945 When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.
Articles 5069-1.03 and 5069-1.05 are not ambiguous and do not overlap. Article 5069-1.03 refers only to interest commencing on the thirtieth day after the debt is due, which could only be prejudgment interest, and art. 5069-1.05 refers only to interest on judgments. This was the express holding of the Texas Supreme Court in Miner-Dederick Construction Corp. v. Mid-County Rental Service, Inc., 603 S.W.2d 193, 200 (Tex.1980). Miner-Dederick was an appeal from a judgment for damages in contract. Mid-County requested prejudgment interest "at the rate of 9 percent per annum, or alternatively 6 percent, on the awards in its favor." Id. The court rejected the claim for nine percent interest and held that "the proper rate of prejudgment interest is 6 percent per annum." Id. The holding on prejudgment interest was unanimous, although four justices dissented on other grounds. The court quoted with approval from Pecos County State Bank v. El Paso Livestock Auction Co., 586 S.W.2d 183, 187 (Tex.Civ. App.-El Paso 1979, writ ref'd n.r.e.), where the award of nine percent prejudgment interest was reduced to six percent:
The court of civil appeals correctly stated that the proper rate of prejudgment interest is 6 percent per annum. In Pecos County State Bank v. El Paso Livestock Auction Co., 586 S.W.2d 183 (Tex.Civ.App.-El Paso 1979, writ ref'd n.r.e.), the court stated:
"[I]n 1975 the Legislature amended Article 5069-1.05, Tex.Rev.Civ.Stat.Ann., and fixed the usual rate of interest on judgments in this State at the rate of 9% per annum while leaving Article 5069-1.03 unamended at 6%.... As we understand it, the recovery of prejudgment interest where sought at common law as an element of damages was fixed at 6% because the courts by analogy adopted the legal rate of interest fixed by the statute as the standard by which to be governed in assessing those damages for the detention of money. Watkins v. Junker, 90 Tex. 584, 40 S.W. 11 (1897). That was the statutory predecessor to Article 5069-1.03 which is still at 6%. By Article 5069-1.01(b) `[l]egal interest' is still defined as that interest which is allowed by law when the parties to a contract have not agreed on any particular rate, and that is still the 6% as determined by Article 5069-1.03."
603 S.W.2d at 200.
MKT's claim that art. 5069-1.05 allows it to charge prejudgment interest of 10 percent cannot be sustained in light of two clear statutes and the holding in Miner-Dederick v. Mid-County Rental. See also Howze v. Surety Corp. of America, 584 S.W.2d 263, 268 (Tex.1979) (op. on reh'g).
Despite these authorities, we are bound to confront a sizeable group of judicial decisions from Texas and federal courts that hold exactly as MKT urges. These cases hold that prejudgment interest can be recovered on equitable grounds, in addition to the statutory grounds in art. 5069-1.03, and that when equitable pre judgment interest is allowed, it may be recovered at rates higher than the six percent limit in art. 5069-1.03 and possibly as high as 20 percent, based on our post judgment interest statute, art. 5069-1.05. We respectfully decline to follow these cases because, in our opinion, they incorrectly ignore art. 5069-1.03.
In Earl Hayes Rents Cars & Trucks v. City of Houston, 557 S.W.2d 316, 322 (Tex. Civ.App.-Houston [1st Dist.] 1977, writ ref'd n.r.e.), the court reduced from nine percent to six percent the rate of prejudgment interest for the period before September 1, 1975, but left standing the trial court's award of pre judgment interest at nine percent for the period after September 1, 1975 (the date art. 5069-1.05 took effect and raised the post judgment rate to nine percent). We do not view this as an authoritative *946 "holding," however, because the City did not attack the award of nine percent prejudgment interest for the period after September 1, 1975. The City only asked for a reduction in prejudgment interest for the period before September 1. No point of error was presented or decided concerning whether the post judgment interest statute, art. 5069-1.05, could authorize an award of pre judgment interest at nine percent. The court simply decided the issue before itand no other.
In Haag v. Pugh, 545 S.W.2d 22 (Tex.Civ. App.-Eastland 1976, no writ), the court increased the prejudgment interest rate from six percent to nine percent, apparently on the authority of art. 5069-1.05, as amended effective September 1, 1975. The amendment, however, had nothing to do with prejudgment interest. See Ch. 288, sec. 1, 1975 Tex.Gen.Laws 730. The court did not explain how nine percent prejudgment interest could be awarded under art. 5069-1.05, a statute applying solely to interest on judgments.
In Allstate Insurance Co. v. Chance, 590 S.W.2d 703 (Tex.1979), the Texas Supreme Court, in an unsigned, per curiam opinion, upheld an award of nine percent prejudgment interest in a suit on a fire insurance policy. Once again, the issue of the proper rate of prejudgment interest in a contract case was not raised in a point of error, was not discussed, and apparently was not recognized in an opinion summarily reversing the intermediate court on wholly unrelated evidentiary questions. No mention of nine percent prejudgment interest was made in the lower court's opinion. Allstate Insurance Co. v. Chance, 582 S.W.2d 530 (Tex.Civ.App.-Beaumont 1979). The Supreme Court opinion in Allstate does not constitute a holding on this subject because no issue was presented by the parties or confronted by the court. See also Maxey v. Texas Commerce Bank, 580 S.W.2d 340 (Tex.1979) (an unsigned, per curiam opinion refusing a writ of error, n.r.e., and expressing "no opinion" regarding the lower court holding limiting prejudgment interest to 6% per annum in a contract case. This, of course, is not a holding.).
Two courts of appeals have held and explained how prejudgment interest can be recovered under art. 5069-1.05, purportedly based on Texas Supreme Court authority. In Behring International, Inc. v. Greater Houston Bank, 662 S.W.2d 642, 652 (Tex. App.-Houston [1st Dist.] 1983, no writ), a contract case, the court remanded the cause to the trial court to "determine an appropriate rate of prejudgment interest." Id. (emphasis supplied). The court wrote:
The facts are such that the trial court may elect to fix the prejudgment interest rate by using the equitable principles enunciated in Phillips Petroleum Co. v. Adams, 513 F.2d 355 (5th Cir.1975), and Phillips Petroleum Co. v. Stahl, 569 S.W.2d 480 (Tex.1978) or by using the statutory method as provided in Tex.Rev. Civ.Stat.Ann. art. 5069-1 [sic] (Vernon 1981).
The Behring case thus squarely holds that when prejudgment interest is awarded on equitable grounds, it may be awarded at a rate in excess of the six percent limit of art. 5069-1.03. Accord, First City National Bank v. Haynes, 614 S.W.2d 605, 610 (Tex.Civ.App.-Texarkana 1981, no writ). However, neither Phillips Petroleum v. Stahl Petroleum Co. (Stahl) nor Phillips Petroleum Company v. Adams (Adams), the pillars on which Behring rests, made or approved such a holding.
In Stahl, the Texas Supreme Court upheld an award of six percent prejudgment interest made by the lower court on the sole basis of art. 5069-1.03. See Stahl Petroleum Co. v. Phillips Petroleum Co., 550 S.W.2d 360, 365 (Tex.Civ.App.-Amarillo 1977). This statutory holding was expressly approved, 569 S.W.2d at 483-84, but the court went further and recognized equity as an additional basis for an award of prejudgment interesta holding criticized by three concurring justices as "unnecessary" dicta. 569 S.W.2d at 489 (Pope, Barrow, and Chadick, JJ., concurring). The Stahl court thus held that art. 5069-1.03 did not constitute an exclusive list of *947 situations where prejudgment interest could be awarded. Stahl established that prejudgment interest, when not allowed under statute, could be recovered under the equitable doctrine for the use or detention of money. 569 S.W.2d at 485-87.
Stahl did not hold that equitable prejudgment interest could be awarded at any rate higher than six percent. Indeed, it held the opposite. The court repeatedly stated that the rate allowed as equitable prejudgment interest was to be "the legal rate of interest." 569 S.W.2d at 486. The court, using its own emphasis, declared that:
"... the courts have, by analogy, adopted the legal rate of interest fixed by statute as the standard by which to be governed in assessing damages for the detention of money."
Id. (emphasis in original) (quoting Watkins v. Junker, 90 Tex. 584, 40 S.W. 11 (1897)).
Every case cited in Stahl awarded equitable prejudgment interest at the legal rate of interest, i.e., the rate established by art. 5069-1.03, or its predecessors. This statute is entitled "legal rate applicable." The "legal rate" is not the rate set by art. 5069-1.05, which establishes the rate of interest on judgments. Accord, Larcon Petroleum, Inc. v. Autotronic Systems, 576 S.W.2d 873, 879 (Tex.Civ.App.-Houston [14th Dist.] 1979). This may explain why the Supreme Court, in Miner-Dederick, a contract case, rejected a claim for nine percent prejudgment interest and awarded six percent without so much as a citation to Stahl. Miner-Dederick v. Mid-County Rental Service, 603 S.W.2d at 200.
We conclude that Stahl allows courts to award prejudgment interest on equitable grounds at the six percent legal rate of art. 5069-1.03 when no statute provides for such a recovery. It thus enlarges the class of cases in which prejudgment interest may be granted without increasing the rate of equitable prejudgment interest that may be awarded.
We respectfully decline to follow holdings by at least five federal courts that equitable prejudgment interest may be recovered under art. 5069-1.05 at rates of up to twenty percent. See Crown Central Petroleum Corp. v. National Union Fire Insurance Co., 768 F.2d 632 (5th Cir.1985); Union Bank v. First National Bank, 677 F.2d 1074 (5th Cir.1982); Dallas-Fort Worth Regional Airport Board v. Combustion Equipment Associates, Inc., 623 F.2d 1032 (5th Cir.1980); Boehringer Mannheim Diagnostics v. Pan American World Airways, Inc., 531 F.Supp. 344 (S.D. Tex.1981); Meyers v. Moody, 475 F.Supp. 232, 250 (N.D.Tex.1979). All except Crown rely heavily on the opinion in Stahl, 550 S.W.2d 360. Crown and Union Bank are comprehensive, unanimous, single-issue opinions concerning the appropriate rate of prejudgment interest in Texas, and the author of the opinion in Union Bank served on the Texas Supreme Court when Stahl was decided. The opinions reflect the law's confusion. Combustion Equipment states that the Texas Supreme Court has "not yet directly confronted the issue"; that "Texas courts have not spoken with a uniform voice in deciding what rates to apply to various types of equitable prejudgment interest awards"; and that there was no "firm decisional base for choosing a prejudgment interest rate." 623 F.2d at 1041-42. Unfortunately, the Combustion Equipment opinion did not mention the then 10 week old Texas Supreme Court decision in Miner-Dederick, 603 S.W.2d 193, which held that in a contract case, "the proper rate of interest is six percent per annum." 603 S.W.2d at 200. Nor did Crown or Union Bank mention Miner-Dederick. Our federal courts have confronted this issue directly and have spoken with a uniform voice, but we believe they have misinterpreted the Texas Supreme Court's holding in Stahl and ignored its holding in Miner-Dederick.
In Crown, 768 F.2d 632, the Fifth Circuit found a new basis for allowing equitable prejudgment interest at the high rates provided by art. 5069-1.05. The court noted that the issue was "troublesome" before the decision in Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549 (Tex.1985), *948 but concluded that Cavnar, a personal injury case having nothing to do with contracts suits, "must be read to create a judicial scheme for the award of prejudgment interest in all cases." 768 F.2d at 637. The court conceded that "it may appear somewhat odd that `equitable' prejudgment interest is pegged to a statutory [postjudgment] rate," an observation with which we agree. Yet, in an expansive holding, the court declared that, in Cavnar
the Supreme Court has created a new rule that supplants the original equitable prejudgment interest rule and favors the policies of restoring symmetry to the law and compensating all plaintiffs.
768 F.2d at 638.
We disagree with this holding. These laudable goals do not have the effect of repealing an unambiguous statute, art. 5069-1.03. We cannot ignore art. 5069-1.03 simply because it is nonsymmetrical, obsolete, or unwise, nor because other courts, other than the Texas Supreme Court, have done so.
The Crown opinion misconceived the issue decided in Cavnar. The primary issue concerning interest was "whether prejudgment interest is recoverable in personal injury cases." 696 S.W.2d at 550. The court's holding applied to cases "involving wrongful death, survival and personal injury actions." 696 S.W.2d at 556. Cavnar does not apply to contract cases.
We thus hold that in a contract case with no agreed rate of interest, prejudgment interest is limited to six percent by art. 5069-1.03. Miner-Dederick Construction Co. v. Mid-County Rental Service, Inc., 603 S.W.2d 193; Phillips Petroleum Co. v. Stahl Petroleum Co., 569 S.W.2d 480; Pecos County State Bank v. El Paso Livestock Auction Co., 586 S.W.2d 183, 187; Maxey v. Texas Commerce Bank, 571 S.W.2d 39, 51 (Tex.Civ.App.-Amarillo 1978, writ ref'd n.r.e. per curiam, 580 S.W.2d 340 (Tex.1979). MKT was not entitled to charge prejudgment interest of 10 percent. Consequently, the trial court did not err in finding that MKT's alleged charge of 10 percent prejudgment interest was usurious.
The second point of error is overruled.
MKT's first point of error contends that the trial court erred in finding that it "charged" interest to Fiberglass. MKT denies, as a matter of law, that it ever "charged" interest.
The act found to be "charging" of usurious interest was Listvan's testimony. Listvan testified on direct examination that MKT could have earned interest on the money since November 1978; that MKT was claiming interest; and that 10 percent was a "fair" rate to charge for each year the debt was owed. He calculated the interest due on the debt, adding 10 percent and compounding it each year in order to illustrate the sum owed. On cross-examination, Listvan testified that 10 percent was fair because it was below the prime rate for the period and that he had reached the 10 percent figure after discussions with MKT's finance department. He further testified, on cross-examination, that he was "trying to collect interest from Fiberglass at the rate of 10 percent on this past due balance" and that he was "now charging" Fiberglass with 10 percent interest on the balance.
After Fiberglass made a trial amendment asserting usury, MKT recalled Listvan, and he testified that MKT's books showed only the principal amount of the debt, $9,200.00, and no interest charges. MKT requested to withdraw Listvan's testimony "charging" usury, but the request was denied. The court refused to admit testimony from Listvan that he never intended to "charge" interest.
Texas Revised Civil Statutes Annotated art. 5069-1.06 (Vernon Supp.1986) provides penalties for one "who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle...." The term "charges" is not defined by statute, and we have found no case deciding whether a pleading for "interest," joined with testimony that a usurious interest rate would be fair compensation, constitutes "charging."
*949 Under Texas law, it is not required that unlawful interest be agreed to or paid in order to violate the usury statute. Windhorst v. Adcock Pipe and Supply, 547 S.W.2d 260, 261 (Tex.1977) (creditor's unilateral placement of interest charge on account held usurious). "[T]he actionable conduct is that of the creditor acting unilaterally and independently." Dryden v. City National Bank, 666 S.W.2d 213, 218 (Tex. App.-San Antonio 1984, writ ref'd n.r.e.). An "overt act, outside the legal process, to effect the collection of unearned interest" is not required for a usury violation. Rick Furniture Distributing Co. v. Kirlin, 634 S.W.2d 738, 740 (Tex.App.-Dallas 1982, writ ref'd n.r.e.). "[T]he foundation of the statutory action ... is the independent, unilateral claim for usury made by the creditor and not any communication of that charge to the debtor...." Williams v. Back, 624 S.W.2d 272, 275 (Tex.App.-Austin 1981, no writ).
The following cases held that the acts described constituted "charging": Butler v. Wright Way Spraying Service, 683 S.W.2d 823 (Tex.App.-San Antonio 1984), rev'd on other grounds, 690 S.W.2d 897 (Tex.1985) (unilaterally placing on an account an amount due as interest. This holding was expressly affirmed by the Texas Supreme Court, 690 S.W.2d at 898); Dryden City National Bank, 666 S.W.2d 213 (sending demand letters for usurious amounts); Rick Furniture Distributing Co. v. Kirlin, 634 S.W.2d 738 (filing original petition demanding usurious amount, though petition was later amended to exclude that amount); Williams v. Back, 624 S.W.2d 272 (creditor's letter demanding usury, never received by debtor, constituted charging when delivered and opened during trial); Nationwide Financial Corp. v. English, 604 S.W.2d 458 (Tex.Civ.App.- Tyler 1980, writ dism'd) (usury established as a matter of law by counterclaim for usurious amount, though it was later amended to exclude that amount); Moore v. Sabine National Bank, 527 S.W.2d 209 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.) (demanding usurious amounts in notice of intent to repossess, original petition, and sequestration affidavit).
The present case differs from those above because MKT never contracted for, received, or demanded usurious interest before trial; never filed any pleading demanding usurious interest; and never placed an amount due as interest on any business record, invoice, or statement of account. Listvan's testimony was MKT's only demand, communicated or uncommunicated, for illegal interest.
Two courts have held that conduct more offensive to the public policy against usury than that in the present case did not constitute a "charging." In Killebrew v. Bartlett, 568 S.W.2d 915 (Tex.Civ.App.-Amarillo 1978, no writ), the plaintiff's original petition requested interest of 1½ percent per month, and the plaintiff sent invoices stating that interest at that rate would be charged on open accounts, beginning 30 days after purchase. The plaintiff's second amended petition dropped the request for 1½ percent per month interest and instead prayed for 10 percent per annum. The court distinguished the Supreme Court's per curiam opinion in Windhorst v. Adcock Pipe & Supply, 547 S.W.2d 260, where the creditor had also unilaterally charged the customer's open account 1½ percent per month interest. The Killebrew court found that in Windhorst, the creditor had added an entry for interest to the account each month and demanded payment, while its creditor had done neither. The court held that the debtor had not proved "charging" as a matter of law and that the jury's refusal to find that the creditor charged interest was not against the great weight and preponderance of the evidence. The court cited no cases as authority for the holding.
Two months later, in Thomas Conveyor Co. v. Portec, Inc., 572 S.W.2d 361 (Tex. Civ.App.-Waco 1978, no writ), Windhorst v. Adcock Pipe & Supply was distinguished again. As in Killebrew, the creditor's invoices included a sticker stating that the terms were 30 days net, with 1½ percent per month finance charge thereafter. *950 The court noted that the case differed from Windhorst v. Adcock because no finance charge was ever billed to the debtor, accrued on the creditor's books, paid by the debtor, or received by the creditor. No usurious interest was sought in pleadings, as was done in Killebrew. The court affirmed the judgment, and held that "affixing of such label to the invoices does not as a matter of law constitute a usurious `charge'." 572 S.W.2d at 363. The only authority cited for this holding was Killebrew v. Bartlett, 568 S.W.2d 915.
One court has held that when the only "charge" of usury was made in a pleading that was amended to seek lawful interest before usury was asserted, then, as a matter of law, no usurious charge was made. Petroscience Corp. v. Diamond Geophysical, 663 S.W.2d 68 (Tex.App.-Houston [14th Dist.] 1983) writ ref'd n.r.e. per curiam, 684 S.W.2d 668 (Tex.1984). However, in an unsigned, per curiam opinion denying the writ of error, the Texas Supreme Court, without citing authority, expressly rejected the Fourteenth Court's holding that a superseded pleading is not, as a matter of law, a "charging" of interest.
The Supreme Court's holding in Petroscience weakens the authority of Killebrew, where a superseded petition demanded usurious interest, and another court, over dissent, has refused to follow Thomas Conveyor and Killebrew. See Williams v. Back, 624 S.W.2d at 276. Given these developments, we doubt that either Thomas or Killebrew is good law today.
We have found no case holding that an oral request for interest, like the one herein, made in or out of judicial proceedings, constitutes usury as a matter of law or fact.
Texas courts have repeatedly held that usury statutes are penal in nature, result in forfeitures, and therefore, are strictly construed. Houston Sash and Door Co. v. Heaner, 577 S.W.2d 217 (Tex. 1979); First State Bank v. Miller, 563 S.W.2d 572, 577 (Tex.1978); Home Saving Association v. Crow, 514 S.W.2d 160, 165 (Tex.Civ.App.-Dallas 1974), aff'd, 522 S.W.2d 457 (Tex.1975). When the allegedly usurious contract, construed as a whole, is doubtful, or even susceptible of more than one reasonable construction, the courts will adopt the construction that comports with legality. Walker v. Temple Trust Co., 124 Tex. 575, 578, 80 S.W.2d 935, 936 (1935). In this case, there is no contract for interest. Therefore, if this transaction, viewed as a whole, is susceptible of more than one reasonable construction, we will adopt the construction that comports with legality, and we will decide whether the transaction is usurious based on its substance, not on its form. Stacks v. East Dallas Clinic, 409 S.W.2d 842, 845 (Tex.1966); Schmid v. City National Bank, 132 Tex. 115, 117, 114 S.W.2d 854, 855 (1938).
In examining the substance of this transaction, we find nothing except Listvan's testimony to indicate a charging. No invoices requesting interest were sent; no written or oral demands for interest were made; no entry for interest was made in MKT's business records; and no petition requested usurious interest. Like the court in Tyra v. Bob Carroll Construction Co., 639 S.W.2d 690 (Tex.1982), we deem these facts highly probative of the substance of the transaction.
We find that Listvan's testimony is too little and too late to constitute usury as a matter of law under a penal statute that we are bound to strictly construe. We evaluate Listvan's testimony not only against the complete absence of anything else constituting a charging of usury, but also in light of the strong public policy favoring recovery of prejudgment interest, see Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, and in light of the unsettled state of the court-made law indicating that a party who proves himself deserving of prejudgment interest on "equitable" grounds may recover an award of 10 percent or more. See Crown Central Petroleum Corp. v. National Union Fire Insurance Co., 768 F.2d 632, allowing prejudgment interest up to 20 percent per year on equitable grounds under art. 5069-1.05, the postjudgment interest statute.
*951 For reasons stated earlier, we disagree with cases awarding prejudgment interest above the 6 percent rate set by article 5069-1.03. But the important fact in this point of error is not whether prejudgment interest is limited to 6 percent under these facts by article 5069-1.03, or whether, on equitable grounds, it may rise to 20 percent under article 5069-1.05. The fact that at least 10 Texas and federal cases have indicated that such relief exists means that a party, like MKT, who requests such relief is merely exercising its rights under existing case law. If testimony explaining the equitable basis for higher prejudgment interest can be held, as a matter of law, to constitute usury, then those seeking this purported relief must risk severe sanctions under art. 5069-1.06.[1]
The law should not embarrass itself by appearing to create a right to high prejudgment interest rates and then furiously impose Draconian penalties and forfeitures on those bold enough to ask for it. A plaintiff should not have to risk statutory usury penalties under art. 5069-1.06 in order to assert the purported right to equitable relief under art. 5069-1.05. Compare Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968) (defendant in criminal trial may not be forced to forfeit the fifth amendment privilege against self-incrimination in order to assert the fourth amendment privilege against illegal search and seizure).
We sustain appellant's first point of error.
The district court's judgment is reversed, and judgment is hereby rendered: (1) that Fiberglass take nothing on its usury claim against MKT; (2) that, based on the jury verdict, MKT recover from Fiberglass actual damages of $9,290.00, plus simple prejudgment interest on $9,290.00 at the rate of 6% per year from January 1, 1979, to the date of the district court's judgment, May 6, 1985, in the total amount of $3,536.82, plus attorney's fees of $6,120.00 for trial and $2,500.00 for appeal to this Court, plus an additional $5,000.00 in attorney's fees for defending this judgment from an appeal by Fiberglass to the Texas Supreme Court. If Fiberglass does not apply for a writ of error to the Texas Supreme Court, Fiberglass shall receive a credit of $5,000.00. If Fiberglass applies for a writ of error, and the writ is not granted, Fiberglass shall receive a credit of $2,500.00.
Interest shall run at the postjudgment rate of 10 percent per annum from May 6, 1985, on $18,946.82 ($9,290.00 actual damages + $3,536.82 prejudgment interest + $6,120.00 attorney's fees). Interest at the postjudgment rate of 10 percent per annum shall run on the award of $2,500.00 attorney's fees for services in this Court, beginning on the day the last motion for rehearing is overruled or, if none is filed, then 16 days after this opinion is delivered.
All costs in the district court and in this Court are awarded to MKT and against Fiberglass.
NOTES
[1] See Veale v. Rose, 657 S.W.2d 834, 840 (Tex. App.-Corpus Christi 1983, writ ref'd n.r.e.) (evidence supported prejudgment interest of 15 percent per year, with no error asserted in the trial or appellate court); City of Austin v. Foster, 623 S.W.2d 672, 676-77 (Tex.Civ.App.-Austin 1981, writ ref'd n.r.e.) (requiring evidence in the trial court to justify the compounding of equitable prejudgment interest).