**Ronnie R. ALLEN, et al., Appellants,**

**v.**

**Elizabeth Lorraine ALLEN, Appellee.**

No. C14–86–234–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 5, 1988.

Rehearing Denied June 2, 1988.

---

1. *Helms v. State,* 484 S.W.2d 925 (Tex.Crim.App. 1972).

John F. Nichols, Houston, Michael A. Hatchell, Tyler, for appellant.

Larry J. Doherty, Houston, Russell H. McMains, Corpus Christi, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

JUNELL, Justice.

Elizabeth Lorraine Allen (Lorraine or appellee) sued her former husband, Ronnie R. Allen (Ronnie or appellant) to establish her ownership in certain overriding royalty interests allegedly due her under a property settlement agreement incident to their divorce. Fraud and conspiracy counts were also joined against Ronnie, Allen Petroleum, Inc., and several Canadian corporations. The Canadian corporations were ultimately non-suited.

The case was tried to a jury which answered special issues favorably to Ronnie with respect to ownership of an overriding royalty interest under an oil and gas lease on properties in Freestone County and favorably to Lorraine with respect to ownership of an overriding royalty interest under oil and gas leases on properties in Leon County. The jury also made findings favorable to Lorraine on a fraud count. The trial court sustained Lorraine's motion to disregard the issue answered favorably to Ronnie concerning the Freestone County royalty interest and rendered judgment declaring void Ronnie's September 1, 1982 assignment/conveyance to Allen Petroleum, Inc., of the Leon County overriding royalty interest and making the following awards to Lorraine:

(1) Title to a 1.165% overriding royalty interest under oil and gas leases in

Freestone County, out of Ronnie's 2% overriding royalty interest therein;

(2) Title to a 1.165% overriding royalty interest under oil and gas leases in Leon County, out of Ronnie's 2% overriding royalty interest therein;

(3) Judgment against Ronnie for $325,465.68, comprised of the following:

(a) $34,000 (being ½ of the overriding royalty payments received by Ronnie on the Freestone County interest prior to suit);

(b) $221,465.68 (being ½ of $442,931.35 deposited in the registry of the court, representing suspensed royalties due the 2% Freestone County royalty interest);

(c) $30,000 (being ½ of the shut-in royalties received by Ronnie on the Leon County interest prior to suit);

(d) $40,000 in actual damages for the fraud found by the jury;

(4) Judgment against Ronnie for $100,000 in punitive damages for fraud;

(5) Judgment against Ronnie for $53,701.83 in attorneys fees (being 16½% of the sum of $325,465.68 awarded to Lorraine as set forth under (3) above;

(6) Judgment against Ronnie for $5,731.30, for expenses and costs necessary to enforce the agreement incident to divorce;

(7) Judgment against Ronnie for $12,976.64 in pre-judgment interest from October 19, 1982 to date of the judgment, January 17, 1986, at the rate of 10% per annum, compounded daily, on her $40,000 of actual damages for fraud;

(8) Judgment against Ronnie for $9,132.42 in pre-judgment interest from January 1, 1983 to date of the judgment at the rate of 10% per annum, compounded daily, on the $30,000 awarded to Lorraine as set forth in (3)(c) above;

(9) Judgment against Ronnie for $2,367.28 in pre-judgment interest from May 6, 1985 to date of the judgment at 10% per annum, compounded daily on the $34,000 awarded to Lorraine as set forth in (3)(a) above.

The trial court judgment also ordered that all damages awarded to Lorraine in the judgment together with interest thereon be paid by the district clerk of Fort Bend County to Lorraine and her attorneys out of the funds held in the registry of the court.

Additionally, the trial court judgment ordered Ronnie to execute and deliver to Lorraine and her attorneys general warranty assignments of both of the 1.165% overriding royalty interests awarded to Lorraine in the judgment.

Ronnie's second wife, Rebecca R. Allen, and Allen Petroleum, Inc. were parties to the suit. The trial court's judgment denied Lorraine any recovery against either of them and denied Rebecca any recovery against Lorraine. Although Allen Petroleum, Inc. is named as an appellant in the appellants' brief and joined as a principal in the supersedeas bond, all of the points of error are Ronnie's points of error and all of the relief requested on appeal is requested by Ronnie. Therefore, in this appeal we will treat Ronnie as the sole appellant and Lorraine as the sole appellee.

An overview of relevant facts is necessary to clarify the issues. Ronnie and Lorraine were married in 1967 in Louisiana where Ronnie worked in his family's oil and gas business. The Allens sold their interest in the family business in 1974 and moved to Houston, where Ronnie continued in the oil and gas business. Ronnie acquired various leases in East Texas, which he began to develop with the financial backing of several Canadian corporations.

Allen Petroleum, Inc. (API), of which Ronnie was president and 25 percent shareholder, was formed with the Canadian corporations early in 1981 to acquire, explore, develop, and operate oil and gas leases. Numerous problems between Ronnie and the Canadian corporations arose early in the business relationship. An initial attempt to settle those problems resulted in the "Summary of Heads Agreement," executed by Ronnie and representatives of the Canadian corporations on July 24, 1981. Among other things, that Agreement expressly acknowledged Ronnie's right to a

2% overriding royalty interest in the Freestone County leases (the Freestone Interest) one of the two properties here at issue. That Agreement did not grant Ronnie any overriding royalty interest in the Leon County leases (the Leon Interest), the second disputed property.

Notwithstanding the July, 1981, Summary of Heads Agreement, the relationship between Ronnie and the Canadians continued to deteriorate throughout 1981 and into 1982. Another effort to resolve the business problems culminated in the execution by Ronnie and the Canadians of a comprehensive settlement agreement on May 12, 1982 (the May 12 Agreement). The May 12 Agreement superseded the Summary of Heads Agreement. Among the provisions of the May 12 Agreement was the acknowledgment of Ronnie's ownership of a 2 percent overriding royalty interest in the Leon County property, as well as an agreement to convey to Ronnie by June 15, 1982, if not already conveyed, a 2 percent overriding royalty interest in the Freestone County property.

After the July 24, 1981, Summary of Heads Agreement and before the May 12, 1982, Settlement Agreement the Allens separated and Lorraine filed suit for divorce. Pursuant to a court order in the divorce suit, Ronnie filed a sworn Inventory and Appraisement on June 3, 1982. Although advised to do so by his attorney, Ronnie failed to list in the Inventory his overriding royalty interests in the Freestone or Leon properties. It is undisputed that Ronnie did not inform Lorraine of the existence of the May 12 Agreement. Ronnie had assigned the Leon Interest from API to himself in late 1981; and later, on September 1, 1982 assigned the same interest back to API.

The Allens were divorced on October 19, 1982. The divorce decree incorporated a property settlement agreement incident to divorce. That settlement agreement provided that Ronnie and Lorraine each would own one-half of all mineral interests owned by the parties as of October 19, 1982.

The parties to the lengthy May 12 Agreement met some, but not all, of the performance deadlines contained therein. The actual conveyances of the Leon and Freestone overriding royalty interests to Ronnie occurred in August 1983, approximately ten months after the final divorce decree.

Lorraine brought this post-divorce suit against Ronnie and API, asserting a contract claim to the Freestone and Leon overriding royalty interests due her under the property settlement agreement incident to divorce. She alleged further that Ronnie committed fraud in concealing from her the existence of the May 12 Settlement Agreement.

The case was tried to a jury. In answer to Special Issues the jury made the following findings:

(1) The 2 percent overriding royalty interest in the Freestone County acreage was not owned by the parties on October 19, 1982, the date of divorce;

(2) the 2 percent overriding royalty interest in the Leon County acreage was owned by the parties on October 19, 1982;

(3) Ronnie had received $60,000.00 in presuit royalties on the Leon County acreage;

(4) Ronnie's failure to disclose the May 12 Agreement to Lorraine was fraud;

(5) such fraud was a proximate cause of monetary loss to Lorraine;

(6) Lorraine suffered $40,000.00 in actual damages for the monetary loss resulting from the fraud;

(7) Ronnie acted intentionally or with malice to deprive Lorraine of her property rights;

(8) $100,000.00 should be awarded to Lorraine as punitive damages against Ronnie;

(9) 16½ percent of total recovery is reasonable compensation for attorney's fees for legal services rendered to Lorraine; and

(10) $5,731.70 is reasonable compensation for other expenses necessarily incurred by Lorraine to enforce the agreement incident to divorce.

■ Ronnie now brings this appeal, asserting fourteen points of error. In the

first three points of error appellant contends the trial court erred in disregarding the jury's negative answer to Special Issue No. 1 and in awarding Lorraine ownership of one-half of the Freestone royalty interest (1%) plus a 0.165% interest therein as attorney's fees. By its negative answer to Special Issue No. 1 the jury failed to find from a preponderance of the evidence that the parties owned the 2% Freestone overriding royalty interest as of October 19, 1982. Appellant asserts that there is legally sufficient evidence to support the jury's failure to find ownership and that Lorraine failed to sustain her burden of proving as a matter of law that the parties did own the interest at the date of divorce. Therefore, appellant argues, the trial court erred not only in awarding to Lorraine an ownership interest in said Freestone County royalty but also in awarding to Lorraine recovery of one-half of the presuit Freestone royalties paid to Ronnie, one-half of the Freestone suspensed royalties that had been deposited in the registry of the court, and attorney's fees.

We disagree with appellant's contentions. We hold the trial court properly granted Lorraine's motion to disregard the jury finding on Special Issue No. 1, properly awarded her ownership of a 1.165% overriding royalty interest under the Freestone lease, one-half of the Freestone presuit and suspended royalties plus attorney's fees.

In the case before us the jury's negative finding in response to Special Issue No. 1 means that Lorraine, the party with the burden of proof on that issue, failed to carry her burden of proving ownership of Freestone. A trial court may not disregard a jury's negative finding and substitute an affirmative finding unless the evidence conclusively establishes such affirmative finding. *New Process Steel Corporation, Inc. v. Steel Corporation of Texas, Inc.,* 703 S.W.2d 209, 216 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Long v. Tascosa National Bank of Amarillo,* 678 S.W.2d 699, 704–05 (Tex.App.—Amarillo 1984, no writ); *Brownsville & Matamoros Bridge Co. v. Null,* 578 S.W.2d 774, 780 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Having examined the record,

we agree with the ruling of the trial court. We hold the evidence conclusively establishes the parties' ownership as a matter of law of the Freestone royalty interest as of October 19, 1982, the date of divorce.

The Canadian corporations first granted Ronnie a 2 percent overriding royalty interest in the Freestone County acreage under the 1981 Summary of Heads Agreement. The May 12 Agreement, which superseded the 1981 Summary of Heads Agreement, addressed Ronnie's interest in Freestone as follows:

> 16. [T]he SPC, Night Hawk and Ronrico companies hereby agree that they shall by 15th of June, 1982 execute and deliver to Allen, if he has not already received same.... the following conveyances:
>
> (i) a 2 percent overriding royalty in all minerals owned by the assignors in the following properties:
>
> (a) Oil and Gas Leasehold interests in approximately 4,300 acres located in Freestone County, Texas, pursuant to a lease dated 27th October, 1981.

Ronnie claims, however, that he did not own the Freestone interest until the Canadians conveyed it to him in a post-divorce instrument executed August 15, 1983. He maintains the 1983 conveyance was due entirely to his own efforts, through post-divorce dealings with the Canadians and the negotiations between them. He further argues that any interests he may have had under the terms of the May 12 Agreement were extinguished when he unilaterally rescinded that Agreement after the Canadians breached various provisions.

■ The fact that Ronnie was not actually conveyed title until August 1983 is of no consequence, since the longstanding Texas doctrine of inception of title applies. Inception of title occurs when a party first has a right or claim to the property; title need not be vested at such time. *Strong v. Garrett,* 148 Tex. 265, 224 S.W.2d 471 (1949); *Pettitt v. Pettitt,* 704 S.W.2d 921, 924 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Therefore, we hold that Ronnie's contract right to a 2% overriding

royalty interest in the Freestone acreage, which originated under the Summary of Heads Agreement and was confirmed under the May 12 Agreement, was in effect at the date of divorce. We hold as well that Lorraine is entitled to her one-half share of the Freestone Interest under the property settlement agreement.

▆▆▆ Contrary to Ronnie's assertions, we find no evidence in the record that Ronnie unilaterally rescinded the May 12 Agreement. Thus the Agreement was in effect as of October 19, 1982.

Upon rescission of a contract, all rights and liabilities of the parties are extinguished, the parties are restored to their former position, and the contract is annulled. *Manges v. Guerra,* 621 S.W.2d 652, 658 (Tex.Civ.App.—Waco 1981), *rev'd in part and aff'd in part,* 673 S.W.2d 180 (Tex.1984). We find no evidence that the agreement was rescinded. Rather, the testimony of Ronnie Allen himself as well as that of one of the Canadian principals, reveals that the contract continued in force after the Allen divorce. Furthermore, in seeking rescission of a contract, a party must restore or offer to restore to the other party benefits received under the contract. *Boyter v. MCR Construction Co.,* 673 S.W.2d 938, 941 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *Gage v. Langford,* 582 S.W.2d 203, 206 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.). The record here establishes that Ronnie continued to accept money under the terms of the May 12 Agreement after he claims he had rescinded it.

Although Ronnie may have had the right to rescind the May 12 Agreement, and was informed by his attorney that rescission would be one option to resolve ongoing business problems, there is no evidence that he ever committed any act of rescission, much less communicated his intent to rescind to the Canadians. Ronnie's testimony that he wanted to rescind the agreement and pursue with each company a separate settlement agreement does not rise to the level of rescission; neither does the fact that Ronnie filed an operator's lien against the Canadians' property to coerce payment, since he had that right under the May 12 Agreement.

The lengthy testimony of one of the Canadian principals, William Scott, President of Saxton Corporation, belies Ronnie's arguments that the May 12 Agreement was rescinded. Scott testified that Saxton did nothing to rescind or abandon the May 12 Agreement. He conceded that some final payments did not meet the Agreement's performance deadlines, but he stressed that Ronnie retained all payments received. Ronnie did not communicate to the Canadians that he had ended the Agreement. Scott emphasized that Saxton did totally live up to its obligations under the May 12 Agreement and stated that the 2 percent overriding royalty interest in Freestone that was assigned to Ronnie in August of 1983 is the same 2 percent interest that was the subject of the May 12 Agreement. Scott stated that Saxton Corporation tried to honor the May 12 Agreement and it was because of that Agreement that Saxton assigned the royalty interest to Allen in August of 1983.

Ronnie argues that Scott's 1984 affidavit denying Ronnie's ownership interest in Freestone supports his claim of rescission. Scott had signed an affidavit at Ronnie's request. In that affidavit Scott stated that prior to the date of the assignment in August of 1983 Ronnie did not own or have claim to the interest in the Freestone property. In his testimony, however, Scott claimed that Ronnie had informed him that this affidavit was "for business purposes" and Scott further testified that he was unaware of the Allens' marital problems and would not have participated in possibly cheating Mrs. Allen out of a potential interest and he would certainly not agree to sign such a document again.

We hold the May 12 Agreement was not rescinded but remained in force at the date of divorce; the Allens owned the Freestone Interest as a matter of law on October 19, 1982; and Lorraine was properly awarded her one-half share of the Freestone overriding royalty interest under the property settlement agreement, plus an additional 0.165 percent interest therein as attorney's

fees. We will address the issue of attorney's fees in detail in the discussion of point of error eleven below. We hold the trial court properly disregarded the jury's negative answer to Special Issue No. 1 and overrule points of error one through three.

In appellant's fourth point of error Ronnie contends the trial court erred in overruling his motion for new trial because the jury's answer to Special Issue No. 2 is not supported by factually sufficient evidence. The jury found in answer to the second special issue that Ronnie and/or Lorraine owned a 2% overriding royalty interest in the Leon County acreage on October 19, 1982. The May 12 Agreement unambiguously acknowledged Ronnie's right to that interest as follows:

> 5. The parties to this Agreement do hereby acknowledge Allen's ownership interest in, retention of, and entitlement to, a 2% override on all production of mineral substances ... produced out of the 720 acres presently under lease by the Parties in Leon County, Texas.

In reviewing a factual insufficiency point, we must consider all evidence in the record relevant to the fact finding being challenged. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). We will sustain a factual insufficiency point only if we determine the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Id.,* 150 Tex. at 664–65, 244 S.W.2d at 661.

We have considered all relevant evidence in the record concerning ownership of the Leon interest, including the May 12 Agreement and its alleged rescission. Since we have reviewed the evidence in detail under the first three points of error, and since appellant has adopted the same arguments for his fourth point, it is unnecessary to repeat the discussion.

We hold the evidence is sufficient to support the jury's finding that the parties owned the Leon Interest at the date of divorce. The fourth point of error is overruled.

In points of error five through eight appellant challenges the jury findings that Ronnie's failure to disclose the May 12 Agreement to Lorraine was fraud, that such fraud caused monetary loss to Lorraine of $40,000, that Ronnie acted with malice and Lorraine should be awarded $100,000 in exemplary damages. Ronnie contends the evidence is factually insufficient to support these findings and the punitive damages finding is excessive.

■ The evidence is undisputed that Ronnie failed to disclose to Lorraine the May 12 Agreement. There is no evidence, however, that her lack of knowledge of the May 12 Agreement caused Lorraine any monetary loss or diminished any benefit accruing to her from that agreement. We have held that the May 12th Agreement was still in effect on the date of divorce, that by reason of the May 12th Agreement Ronnie owned the two disputed royalty interests on that date and under the terms of the settlement agreement incident to the divorce Lorraine received a 50% ownership interest in each of said royalty interests. The only evidence of any actual damages to Lorraine is her failure to receive her one-half of the royalty payments made to Ronnie prior to this suit and those royalties suspensed and placed in the registry of the court during the pendency of this suit. Those royalty payments have been awarded to Lorraine under her contract claim pursuant to the property settlement agreement. Also, she has been awarded her ownership interests in the disputed royalty interests.

In an apparent effort to prove some tort damages for fraud, Lorraine testified that her home had been posted for foreclosure sale, she could not pay her credit card bills and she was unable to afford proper medical care. She also testified generally to a change in her lifestyle. We hold such events are too remote to be proximately caused by the fraud found by the jury, and they constitute no evidence of any recoverable actual damages attributable to fraud.

■ In order to maintain the independent tort of actionable fraud, Lorraine must satisfy all elements of the tort. She has not

proved she suffered injury from the fraudulent act. Here the injury is only the economic loss to the subject of the contract itself. For those damages Lorraine's action sounds in contract alone. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986).

■ If we were presented with a properly preserved point of error asserting there is no evidence of recoverable damages for fraud, we would sustain it and reverse and render judgment for Ronnie on the fraud cause of action. However, we have only an insufficient evidence point of error before us and are limited to reversing and remanding that part of the case for a new trial. Therefore, we sustain appellant's points of error five and six and modify the trial court's judgment by reducing the actual damages awarded to Lorraine from $325,-465.68 to $285,465.68; and we sever and remand the fraud cause of action to the trial court for a new trial. *See Glover v. Texas General Indemnity Company,* 619 S.W.2d 400, 401–02 (Tex.1981).

Because we are reversing and remanding that part of the trial court's judgment awarding to Lorraine $40,000 in actual damages for fraud, we must also reverse that part of the judgment that awards to Lorraine $12,976.64 in prejudgment interest on the $40,000 of actual damages for fraud, and sever and remand that part of the cause of action for a new trial.

Points of error number seven and eight contain appellant's challenges to the factual sufficiency of the evidence to support the jury findings of malice and punitive damages of $100,000.

■ We are holding there is no evidence of any recoverable actual damages for fraud. In the absence of the commission of an independent tort and evidence supporting a finding of actual damages proximately caused by that tort, punitive damages may not be recovered. *Bellefonte Underwriters Insurance Company v. Brown,* 704 S.W.2d 742 (Tex.1986). Because we are reversing the judgment for actual damages for fraud, we must also reverse the award of punitive damages and remand that part of the fraud cause of

action for a new trial along with the cause of action for actual damages. We sustain appellant's points of error seven and eight.

■ In his ninth point of error appellant alleges the trial court erred in overruling his objection to the court's definition of "rescission" in the charge to the jury and in refusing to give the definition requested by appellant. However, under this point of error appellant actually does not complain of a definition but complains of the following instruction pertaining to rescission: "A contract cannot be rescinded by one party acting alone. All parties must agree if there is to be a rescission." This was an erroneous instruction.

Breach of a contract by one party may give the other party a right to rescind unilaterally and without the agreement of the breaching party. *Cundiff v. McLean and Miller,* 40 Tex. 391 (1874); *Greenwall Theatrical Circuit Co. v. Markowitz,* 97 Tex. 479, 79 S.W. 1069 (1904).

In this case, however, the erroneous instruction would not require reversal because we have held as a matter of law that there was no rescission by Ronnie, no issue was submitted to the jury concerning rescission and there is no point of error complaining of the trial court's refusal of such issue. We overrule point of error nine.

In his tenth point of error Ronnie claims the trial court erred in awarding 10% prejudgment interest on the $30,000 awarded to Lorraine (her one-half of the shut-in royalties received by Ronnie on the Leon County interests prior to suit) and the $34,-000 awarded to Lorraine (her one-half of the royalty payment received by Ronnie on the Freestone County interests prior to suit). Ronnie contends the prejudgment interest rate should be 6% simple interest under art. 5069–1.03 and the decision in *Missouri–Kansas–Texas Railroad Company v. Fiberglass Insulators,* 707 S.W.2d 943 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

■ Lorraine contends the prejudgment interest rate should be 10%, compounded daily, under the supreme court's decision in *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985) and this Court's

decision in *City of Houston v. Wolfe*, 712 S.W.2d 228 (Tex.App—Houston [14th Dist.] 1986, writ ref'd). Lorraine argues that the *Cavnar* rule of 10% prejudgment interest compounded daily applies to all kinds of cases without exception.

The supreme court's recent decision in *Perry Roofing Company v. Olcott*, 744 S.W.2d 929 (Tex.1988), seems to eliminate some of the uncertainty concerning the extent to which the rule of *Cavnar* will be applied. This Court in *City of Houston v. Wolfe* applied the compounded daily part of the *Cavnar* rule to an eminent domain case, but in *Wolfe* the percentage rate of the prejudgment interest was not in issue. This Court in applying the *Cavnar* rule said, "... as a matter of law, in all types of cases, awards of prejudgment interest shall be compounded on a daily basis." *Id.*, at 229.

The supreme court has approved this statement by its unqualified refusal of the writ of error in *Wolfe*. Therefore, we hold that prejudgment interest in this case should be compounded daily.

■ The supreme court's decision in *Perry Roofing Company v. Olcott* makes it clear, however, that the percentage rate of prejudgment interest in cases controlled by art. 5069–1.03 is 6% and not 10%. In that case Perry Roofing Company had installed a new roof for Olcott. The roof leaked. Olcott sued Perry to recover the cost of repairing the roof and repairing damage done to the interior of the home. The supreme court held the case was not controlled by art. 5069–1.03. That statute reads as follows:

> "When no specified rate of interest is agreed upon by the parties, interest at the rate of 6% per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable."

Because the contract between Olcott and Perry was not a contract "ascertaining the sum payable" the supreme court applied the *Cavnar* prejudgment interest rate. In doing so, however, the supreme court, citing with approval *Missouri–Kansas–Texas Railroad Company v. Fiberglass Insulators*, 707 S.W.2d 943 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), expressly recognized that where contractural damages are clearly ascertainable from the face of the contract, art. 5069–1.03 will control and limit prejudgment interest to a rate of 6% per annum. In distinguishing *Fiberglass Insulators* the Supreme Court in *Perry Roofing* said:

> "Fiberglass Insulators involved a claim for contractural damages that were clearly ascertainable from the face of the contract; therefore, the issue of unascertainable damages was not presented because the case was governed by art. 5069–1.03."

In the instant case the contract between the Allens provided that each would own one-half of all mineral interests owned by the parties on the date of their divorce. In this suit by Lorraine to enforce that contract she sought to recover from Ronnie her one-half of the Leon and Freestone royalty interests plus her one-half of royalties paid to Ronnie prior to Lorraine's filing of the lawsuit. It was with respect to these presuit royalties paid to Ronnie that the trial court awarded prejudgment interest. It is clear from the face of the contract itself that Lorraine was entitled to exactly one-half of any such presuit royalties paid to Ronnie. There was no room for the award of any more or any less than that. It is clear from the face of the contract itself that the sum payable to Lorraine under the contract was definitely ascertainable. In this case art. 5069–1.03 controls and fixes the prejudgment interest rate at 6%.

Therefore, we sustain in part and overrule in part point of error ten and hold that Lorraine is entitled to recovery of the following:

(a) Prejudgment interest at the rate of 6% per annum, compounded daily, from January 1, 1983 to January 17, 1986, the date of the trial court's judgment, on the $30,000 awarded to Lorraine as her one-half of the shut-in royalties paid to Ron-

nie on the Leon County interests prior to suit; and

(b) prejudgment interest at the rate of 6% per annum, compounded daily, from May 6, 1985 to January 17, 1986, the date of the trial court's judgment, on the $34,-000 awarded to Lorraine as her one-half of the royalty payment to Ronnie on the Freestone County interests prior to suit.

The judgment of the trial court is modified to reduce the prejudgment interest awarded in these two instances to amounts computed at 6% compounded daily.

In point of error eleven appellant contends there is insufficient evidence to support the jury's answer to Special Issue No. 9. In response to the issue "Find from a preponderance of the evidence reasonable attorney's fees for necessary services rendered to Elizabeth Lorraine Allen to enforce the Agreement Incident to Divorce," the jury answered "16½% (or ½ of 33%)."

The agreement incident to divorce provided: "If a party defaults in performing any obligation under this Agreement so that the other party is required to engage the services of an attorney ... the defaulting party shall pay all reasonable attorney's fees ... incurred."

Appellant argues appellee proved only that she entered into a contingent fee arrangement with her attorney and she failed to prove both the contemplation of a contingency fee in the Allen Agreement and the reasonableness of the fee of 16½% of the total recovery.

We hold there is sufficient evidence to support the reasonableness of the 16½% award and there is no requirement of proof of contemplation of a contingent fee contract. Appellee's attorney offered unrebutted testimony that it was his professional opinion that a contingent fee of one third as expressed in his power of attorney is a reasonable fee for services rendered to appellee. The 16½% fee is well within the range of reasonableness under the evidence. See *Texas Farmers Ins. Co. v. Hernandez*, 649 S.W.2d 121, 124 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). We overrule point of error eleven.

We note, however, that the judgment awarded Lorraine attorney's fees of $53,-701.83, which is 16½% of the trial court's actual damages award of $325,465.68. We have reduced the actual damages award to $285,465.68. Accordingly, we reduce the attorney's fees award to 16½% of the latter amount, or $47,101.84.

In his twelfth point of error appellant argues the trial court erred in imposing a constructive trust on the Freestone and Leon County royalty interests. He maintains the judgment is erroneous because there is no evidence of conduct recognized as a basis for a constructive trust.

We note that the trial court's judgment failed to impose a constructive trust on these royalty interests. There is a recitation in the judgment to the effect that "It is the opinion of the court that the 2% overriding royalty interests of Ronnie R. Allen in the Leon County acreage and in the Freestone County acreage ... should be imposed with a trust constructed in favor of Elizabeth Lorraine Allen." However, nowhere in the judgment does the trial court order, adjudge and decree that a constructive trust is actually imposed upon the two royalty interests. Therefore, point of error number twelve can be overruled for this reason alone.

We are also convinced, however, that had the trial court imposed a constructive trust on the two royalty interests, it would have been error.

A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. It is imposed by law because a person holding title to property would profit by a wrong or be unjustly enriched if permitted to keep the property. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 405 (1960); *Hamblet v. Coveney*, 714 S.W.2d 126, 130 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Hudspeth v. Stoker*, 644 S.W.2d 92, 94 (Tex.App.—San Antonio 1982, writ refused). In order to justify imposing a constructive trust on property, fraud, either actual or constructive, must be present. *Hamblet v. Coveney*, 714 S.W.2d at 131; *Hudspeth v. Stoker*, 644 S.W.2d at 94.

■ The circumstances in the case before us are distinguishable from those cases in which courts impress constructive trusts on property. A typical fact situation in such cases concerns one spouse's unfair disposition of the other's interest in community property, usually to a third party, in fraud of the other spouse's rights. See, *e.g., Spruill v. Spruill,* 624 S.W.2d 694 (Tex.App.—El Paso 1981, writ dismissed); *Carnes v. Meador,* 533 S.W.2d 365 (Tex. Civ.App.—Dallas 1975, writ ref'd n.r.e.). The rationale for imposing a constructive trust is to prevent unjust enrichment by not allowing a third party holding title to property to keep the property.

That justification is absent here. Ronnie claimed he did not own the Freestone and Leon overriding royalty interests on the date of divorce. However, we have held, in affirming in part the judgment of the trial court, that Ronnie and Lorraine did own the two royalty interests on October 19, 1982 and that the trial court judgment properly awarded to Lorraine interests in those two overriding royalty interests.

Also, Allen Petroleum, Inc. is a party to this suit and the trial court's judgment voided the September 1982 assignment by Ronnie to Allen Petroleum, Inc. of the Leon County royalty interest. Our affirmance of that part of the trial court's judgment is binding on both Ronnie and Allen Petroleum, Inc. There is no possibility that Allen Petroleum, Inc. will be unjustly enriched because it is not left holding title to the Leon County royalty interest.

We hold, therefore, that ordering a constructive trust imposed on the two royalty interests would have been an unnecessary and inappropriate remedy in this case. Point of error number twelve is overruled.

■ In point of error thirteen appellant contends the trial court erred in ordering portions of the judgment paid from the funds on deposit in the registry of the court because Lorraine failed to establish any lien, prior right or constructive trust upon said funds. Appellant's brief contains no argument on this point. It merely cites two cases which are not on point.

The trial court's judgment decreed that funds in the registry of the court be paid immediately by the district clerk to Lorraine and her attorneys "for damages awarded herein together with interest thereon. . . ." The funds in the registry of the court were proceeds from the sale of hydrocarbons that were due and payable to the rightful owners of the 2% overriding royalty interest under the Freestone County lease. The proceeds were escrowed by placing them in the registry of the court pending final disposition of this suit. The escrowed funds totaled $442,931.35. The record before this Court contains a trial court order dated March 6, 1986, transferring the escrowed funds to J.E. Junker, an attorney of Fort Bend County, as trustee, and ordering the trustee to place the funds in an interest bearing account with a bank or savings and loan association in Fort Bend County.

The record also reflects that on March 18, 1986, the trial court by order set the amount of a supersedeas bond at $1,750,-000 and on April 17, 1986, a supersedeas bond in that amount with Ronnie R. Allen and Allen Petroleum, Inc. as principals and Aetna Casualty and Surety Company as surety was approved by the district clerk and filed.

The trial court's judgment awarded to Lorraine actual damages of $325,465.68. We have reduced that amount to $285,-465.68 by eliminating therefrom the $40,-000 awarded for fraud. Of the $285,465.68 being awarded to Lorraine under this Court's judgment all but $30,000 is for Lorraine's interest in the Freestone County royalty payments. Since she is the rightful owner of one-half of all royalties paid under the Freestone County lease, it was proper for the trial court to order payment to her from funds in the registry of the court.

With respect to the $30,000 awarded to Lorraine from the Leon County interest shut-in royalty payments made to Ronnie prior to suit, we hold the trial court properly ordered payment to Lorraine from funds in the registry of the court. However, even if the trial court erred in ordering that

amount paid to Lorraine out of the funds in the registry of the court, such error was harmless because appellant Ronnie R. Allen and Allen Petroleum, Inc. filed a supersedeas bond under which Ronnie and his surety will be liable for all amounts awarded to Lorraine under this Court's judgment.

■ In point of error fourteen appellant argues the trial court erred in ordering Ronnie to execute any conveyances to any royalty interests recovered by Lorraine and in ordering that any conveyances be with a general warranty.

Appellee correctly concedes this point of error. Tex.Civ.Prac. & Rem.Code Ann. § 31.001 provides as follows:

A judgment for the conveyance of real property or the delivery of personal property may pass title to the property without additional action by the party against whom the judgment is rendered.

Appellant's fourteenth point of error is sustained and the trial court's judgment is reformed by deleting the requirement that Ronnie execute any conveyances to Lorraine.

In conclusion, we sever and remand to the trial court for a new trial Lorraine's cause of action for actual and punitive damages for fraud and for prejudgment interest therein.

We modify the judgment of the trial court as follows:

(1) by reducing the actual damages awarded to Lorraine from $325,465.68 to $285,465.68;

(2) by reducing the monetary award of attorney's fees from $53,701.83 to $47,-101.84;

(3) by reducing the prejudgment interest award of $9,132.42 to $6,017.89;

(4) by reducing the prejudgment interest award of $2,367.28 to $1,481.94;

(5) by deleting the prejudgment interest award of $12,976.64; and

(6) by deleting the order that Ronnie execute any conveyances or assignments of royalty interests to Lorraine.

Except as set forth above, the judgment of the court below is affirmed as modified.